UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

AUG 1 3 2001

PER _____
DEPUTY CLERK

EMANUEL THOMAS NEWMAN,
        PLAINTIFF,

        V.

RONALD L. JURY, LIEUTENANT,
SIS, ET AL.,
        DEFENDANTS.

CIVIL NO.: 1:CV-01-0677

## BRIEF/MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S SUMMARY
## JUDGEMENT MOTION

        COMES NOW, Emanuel Thomas Newman, Plaintiff, Pro-se, and submits his Brief/Memorandum of Law In Opposition To Defendant's Summary Judgement Motion.

        Plaintiff states that he is a lay individual without any formal training in the law.

        Therefore, he moves this Court pursuant to Haynes v. Kerner, 404 U.S. 519, 520 (1972), and Zilch v. Lucht, 981 F.2d 694 3rd Cir. (1992), which hold that the Courts have an obligation to construe the pleadings of Pro-se litigants liberally.

        In support thereof, Plaintiff states:

## STATEMENT OF THE CASE

This  is a **§1983 / §1331** Bivins action filed by a Federal prisoner who was incarcerated at U.S.P. Allenwood in White Deer, Pennsylvania during the time of all incidents cited in this complaint.

Plaintiff is seeking money damages, because of the injuries he received due to the deliberate indifference of Defendant's James White and Louis Caprio.

The Defendant's have filed an Answer/Motion for Summary Judgement, in which they deny all genuine issues of material fact.

## STATEMENT OF FACTS

On May 08, 1999, inmate Wayne Jackson informed Plaintiff that inmate Kevin Tensley was attempting to get members of his gang (The D.C. Boys) to murder the Plaintiff. The Plaintiff went at once to the unit Officer and told him that he was in fear for his life, because the 'D.C. Boys' were out to get him. This happened just before lock-down. The next day, May 09, 1999, Plaintiff was escorted to the lieutenant's office to see Defendant Caprio. Plaintiff explained in detail everything inmate Jackson had told him. Defendant Caprio informed Plaintiff that he would look into the matter and get back with him, and had Plaintiff escorted back to the Housing Unit.

The very next day, May 10, 1999, Plaintiff was called via institutional pass to see Defendant White at the lieutenant's office. Defendant White informed Plaintiff that he had looked into the matter of the threats made against his life by the 'D.C. Boys', and that his informants had confirmed the threats as real.

The Plaintiff related to the Defendant all that inmate Jackson had told him, and information concerning the threat by inmate Bobby Hazel, who had been offered money to assault the Plaintiff.

Defendant White claimed that there was more to the story, and that the Plaintiff was withholding information from him.

When Plaintiff had stated that he had told him everything, Defendant White said he would have to look further into the matter and get back with the Plaintiff.

On May 14, 1999, inmate Tensley attacked Plaintiff, hitting him about the head and face with a weapon, inflicting substantial injuries, including damaging Plaintiff's left eye thereby causing permanent spots in his field of vision.

## ARGUMENT:

Summary Judgement is to be granted only if the record before the Court shows "that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgement as a metter of law."

Rule 56(c), Fed.R.Civ.P. states that a "material" fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 248 (1986).

The Defendant's failed to support their arguments with either evidence or affidavits denying the factual allegations set forth in Plaintiff's complaint. The Plaintiff, on the other hand, has submitted affidavits and evidence in support of his claims.

The affidavits and evidence submitted by this Plaintiff squarely contradicts the Defendant's answer in which they claim none of the incidents took place. Furthermore, the allegations contained in Plaintiff's affidavit portray complete and deliberate indifference on the part of the Defendants.

When both Defendant's were forewarned of the threats to the Plaintiff's safety by the Plaintiff himself, and then later confirmed by their own sources as being real.

There are clearly genuine issues of material fact. Furthermore, said factual disputes are material under the governing law, because the Constitution of the United States requires prison officials to provide "reasonable safety" for prisoners. Helling v. McKinney, 113 S.Ct. 2475, 2480 (1993).

They must take reasonable measures to protect prisoners from assaults by other inmates.

Furthermore, "...a prison official can be  found [to be] reckless or deliberately indifferent if the official knows of and disregards an excessive risk to [an] inmates health or safety..." U.S. v. Farmer, 511 U.S. at 836-837.

The Third Circuit has stated in Young v. Quinlan, 960 F.2d 351, 360-361 (3rd Cir. 1992), "a prison official is deliberately indifferent when he knows or should have known of a sufficiently serious danger to an inmate."

In the case of Kenneth Young, the prison officials at U.S.P. Lewisberg failed to protect him from attacks by his fellow inmates. Young's cellmate repeatedly asked him to have sex with him.

When he refused he was beaten, raped and made to perform oral sex with a razor held to his neck. He repeatedly sent letters to prison officials requesting to be placed in protective custody.

In this Plaintiff's case, he was assaulted once by "D.C. Boys" gang member Albert Gass, he beat the Plaintiff about the head, neck and arms with a metal club.

After being released back into general population and being made aware of a second and more serious plot to murder me by other member of the "D.C. Boys", Plaintiff, upon his own request went to Defendant Caprio and explained in detail everything that he had been made aware of and requested him to take whatever measures necessary to ensure my safety. **(See paragraph #7 & #8 affidavit)**. Defendant Caprio returned Plaintiff to the population, stating he would look into the matter and get back with him.

Plaintiff was then called to see Defendant White, who stated that he had been requested to investigate my claims of a serious threat to my safety. Defendant White stated that he had checked with his inmate informants and confirmed a plot against me by the "D.C. Boys".

This Plaintiff detailed everything I had learned from inmate Jackson and Hazel and requested Defendant White to take whatever steps necessary.

Defendant White accused the Plaintiff of not telling him the entire story, returned me to the general population,

5

stating he would look into the matter further and get back with me.  **(See paragraph #9, #10, #11 affidavit).**

On May 14, 1999 Plaintiff was assaulted in the housing unit, and was beaten about the head and face with a weapon. Furthermore, two officers also received injuries from my attacker. **(See paragraphs #13 & #14 affidavit).**

After remaining in the Special Housing Unit from May 14, 1999 until December 1, 1999, and putting in numerous inmate-to-staff requests to see the eye-doctor, I was seen by Dr. Wyhatt (eye-doctor), who examined me and found abnormal debris floating inside my eye. He further stated that said debris was caused by blood leaking into the vitreous humor which fills the eyeball. This, he stated was a direct result of being beaten in the eye, and would not go away. In fact, it would only get worse with age **(See paragraphs #15, #16, #17 & #18 affidavit).**

"The strong likelihood" of [harm] must be "so obvious that a lay-person would easily recognize the necessity for preventative action." **Young v. Quinlan**, 960 F.2d at 361.

Plaintiff, when interviewed by both Defendant's, had his head completely bandaged, and said bandage was soaked through with blood in one spot. His face and arms were covered with scratched and bruises, and both his lips and jaw were swollen.

Therefore, Plaintiff looked more like he had survived an airplane crash, than a prison assault.

Furthermore, throughout the Bureau of Prisons, the "D.C. Boys" are known to be one of the most violent and dangerous prison inmate organizations that exist.

Plaintiff would relate to the Court that six (6) months after the Correctional association of America private prison opened in Youngstown, Ohio in 1997-1998, that the institution had to be closed, because of two murders by members of the "D.C. Boys" prison gang.

Defendant's White and Caprio, knew or should have known that a threat by the "D.C. Boys", whos leader was Kevin Tensley, was in fact a serious threat to Plaintiff's safety. **(See paragraphs #19 & #20 affidavit).**

Furthermore, once Defendant White had confirmed through his inmate informants that said threat was real; both he and Defendant Caprio whom he reported to, knew of the danger, and acted deliberately indifferently to protect the Plaintiff.

> "We hold that a prison official is
> deliberately indifferent when he
> knows or should have known of a
> sufficiently serious danger to
> an inmate." Young, at 361.

Every inference fairly deducible from the well-pleaded allegations of the complaint should be accepted as true by the Court (for the purposes of ruling on the Motion), including facts alleged "on information and belief". Carroll v. Morrison Hotel McLaughlin v. New York, 149 F.2d 404 (7th Cir 1945) and

United States, ex. rel.. Mclaughlin v. New York, 357 F.Supp. 988 (E.D. New York 1937) (Liberal standard is particularly appropriate with pro-se complaints.)


<u>CONCLUSION:</u>


For the foregoing reasons, the Defendant's Motion for Summary Judgement should be denied.




Respectfully Submitted,


By _____     Date _____
Emanuel T. Newman
13418-039
P.O. Box 5000
Pekin, IL 61555-5000

**U.S. DISTRICT COURT**
**MIDDLE DISTRICT OF**
**PENNSYLVANIA**

EMANUEL THOMAS NEWMAN,

          Plaintiff,                          Civil No.: 1:CV-01-0677

Vs.                                              (Rambo, Judge)

Ronald L. Jury, LT, SIS, ET AL.,
          Defendant,

---

## CERTIFICATE OF SERVICE BY MAIL

The undersigned plaintiff hereby certifies that persuant to 28 U.S.C. § 1746, the following is true.

That I, Emanuel Thomas Newman, have placed sufficient postage for First Class mailing to all the defendant's via their attorney upon who I am serviing all documents. (Memorandum of LAW).

This _10Th_ day of _August_ 2001.

By, _Emanuel Thomas Newman_
          Emanuel Thomas Newman 13418-039
          P.O. Box 5000
          Pekin, Illinois 61555-5000

COPIES TO:      U.S. Attorney              Clerk Of The Court
                316 Federal Building       U.S. District Court
                240 West Third Street      228 Walnut Street
                Williamsport, PA 17703     P.O. Box 983
                                           Harrisburg, PA 17108

STATE OF ILLINOIS)
                 )  SS:
COUNTY OF TAZWELL)

## AFFIDAVIT OF EMANUEL THOMAS NEWMAN

That before me appeared, Emanuel Thomas Newman, Who is of the majority age of the residences of Tazwell county, Illinois, and he made the following statements based upon his personal knowledge:

1) That I was incarcerated at U.S.P. Allenwood during all times relevant to the now pending civil complaint.

2) That I have exhausted all Bureau of prisons administrative remedies procedures, and I was unsuccessful at every level.

3) That during the winter of 1998/1999 inmate Kevin Tensley requested my aid in doing his post conviction pleadings, because he could neither read or write, and knew nothing about the law. Therefore, I agreed to help him. However, after reviewing Tensley's legal documents, I discovered that he had been an informant for the Drug Enforcement Administration. It was at that time I packed up all of his legal material and returned it to him stating that I could not help him. I thought no more of the matter.

4) That on April 16, 1999 an inmate who I didn't know at that time (Albert Gass) without provocation or apparent reason assaulted me with a metal club in the dish room of   the food services department of U.S.P. Allenwood, where we both worked. I suffered numerous contusions and cuts, and was taken to the prison hospital on a gurney, where I received 21 stiches in the head. Furthermore I remained in the prison hospital under observation for five days, and on the fifth day I was transferred to the special housing unit as an administrative detainee on April 21, 1999. **(See, Exhibit # 1.)**

5) That S.I.S. lieutenant Ronald L. Jury interviewed me in the special housing unit on April 21, 1999, in an attempt to determine the cause of the incident. I explained that I did not know the inmate who had been identified to me as being Albert Gass, and that I had no idea why he attacked me. At that time Lieutenant Jury returned me to the general population.

Page one of five.

6) That because of the size of the head wound I received during the assault it was necessary for me to have my entire head bandaged. Furthermore, the wound continued to bleed for some three to four weeks after the assault.

7) That on the evening of May 8, 1999, just before institution lock down I was approached by inmate Wayne Jackson, who lived in the same housing unit, and warned that inmate Kevin Tensley been behind the April 16, 1999 assault on my person, and was organizing members of the D.C. Boy's prison gang to murder me, because the first attempt had failed. Right after the conversation with inmate Jackson, I went to the housing unit officer, officer couch and informed him that I had learned of a serious threat to my safety. Our unit was then locked down for the night.

8) That on May 9, 1999 I was escorted to the Lieutenant's office to see Lieutenant Louis Caprio. I detailed about the April 16, 1999 assault, because Lt. Caprio had been on the scene that day. I further related the information that inmate Jackson had made me aware of concerning Tensley, the D.C. Boy's prison gang, and the murder plot. Because inmate Jackson had conditioned his information upon anonymity, I did not tell Lt. Caprio who had given me the information. He then asked me what I wanted him to do? I answered to take whatever measures necessary to ensure my safety. Lieutenant Caprio said he would investigate the matter and get back with me. I was then escorted back to the housing unit.

9) That on May 12, 1999 I was called to the Lieutenant's office for an interview with Lieutenant James White. On my way to that interview I was met by inmate Boby Hazel, who told me that Tensley had offered him money to stab or beat me to death. Inmate Hazel stated that Tensley was afraid that I was going to expose him as an informant to their gang (the D.C. Boy's).

10) That upon arriving at the Lieutenant's office for the interview with Lt. White, I was informed by him that he had been asked to follow up the investigation by Lieutenant Caprio, and that his informants had confirmed that the threat to my safety was very real. I then detailed all that I had learned from inmates Jackson and Hazel.

Pagr two of five.

**11)** That Lieutenant White further confirmed that it had been Tensley who had gotten inmate Albert Gass to assault me on April 16, 1999 in the food services department. I asked Lieutenant White as I had asked Lieutenant Caprio to take whatever measures necessary to ensure my safety. Lieutenant White accused me of not telling him the entire story, and claimed that there was more I wasn't telling him. I stated that I had told both him and Lieutenant Caprio everything I knew. At that time he stated that he would look into the matter further and get back with me. I was then returned to the general population.

**12)** That both inmate Jackson and inmate Hazel were waiting for me outside of the Lieutenant's office, and were shocked to see me return to the population. They walked me back to the housing unit where we all parted company.

**13)** On May 14, 1999, inmate Kevin Tensley assaulted me in the housing unit beating me about the head and face with what appeared to be some type of metal weapon, until I was rescued by staff and taken to the prison clinic where I received basic medical treatment. I was then confined to the special housing unit as an administrative detainee until I was once again released into general population.

**14)** That during the assault by Tensley, several officers received wounds from Tensley who was swinging wildly. After the assault Tensley was issued incident reports for the assaults against myself and the officers. However, it was later revealed to me by one of the special housing unit officers, that inmate Tensley had all of the incident reports against him expunged, that he received a sum of money, and was transferred to a low security Federal Correctional Institution on or about August 13, 1999. I remained in administrative detention until December 1, 1999.

**15)** That as a result of the assault by inmate Kevin Tensley my left eye was damaged. I put in repeated inmate to staff request to see the doctor about my vision because I was having problems seeing. There were large spots in my field of vision of my left eye, and the vision blurred  occasionally for long periods of time. All of my request went unanswered while I remained in the special housing unit. (See, **EX.2**)

Page three of five.

16) That upon my release form the special housing unit, I was seen by the Dr. Wyhatt (an eye doctor) on January 12, 2000 concerning my complaints of large spots in my field of vision and blurred vision in my left eye. **(See, Exhibit # 3.)**

17) That Dr. Wyhatt who had examined me for my eyes since I had arrived at U.S.P. Allenwood stated the following to me: That since he had last examined me in 1998, that a very abnormal amount of debris was floating inside the vitreous humor which fills my left eye ball. Furthermore, that he saw several very large bits of debris that he stated would cause spots in my field of vision. He also stated that there appeared to be a very large piece of debris and that without question that was going to cause spots and blurred vision. He requested to know what had happened, and I detailed the fact that I had not had any problems with large spots or blurred vision in my left eye before being beaten about the head and face with a metal weapon by inmate Kevin Tensley on May 14, 1999. He confirmed, that the beating to eye on May 14, 1999 caused vision loss.  He further stated that during the beating one or more of the blood vessels inside my left eye burst, and leaked blood into the vitreous humor. Thereby creating the spots in my field of vision.

18) That Dr. Wyhatt's conclusion was that the condition would not get any better, and only worsen with age.  **(See, Exhibit # 4 and # 5)**

19) That I personally was interviewed by both Lieutenant Louis Caprio and James White. I detailed everything that I had been informed of by inmates Boby Hazel and Wayne Jackson, who were both members of the D.C. Boy's prison gang during the time periods cited in my complaint. Furthermore, I sat before them both with my entire head covered by a bandage that soaked through with blood, because the head wound from the first assault was still bleeding. I had bruises covering my face and arms, and my lips and jaw were swollen.

20)  That I requested both individuals to take what ever measures necessary to ensure my safety. Both Lieutenant James White and Louis Caprio returned me to the general prison population to be assaulted, even after they had in fact confirmed the threats against my person as being real and serious.

That I further state that I have personal knowledge of all of the events detailed in this affidavit, and that all statements are true, correct, and complete to the best of knowledge and belief. **And,**

FURTHER I SAYETH NOT.

By, _[signature]_

Emanuel Thomas Newman
1341 -039
F.C.I. PEKIN
P.O. BOX 5000 (MO-1)
PEKIN, ILLINOIS 61555-5000

8/3/01

```
"OFFICIAL SEAL"
BARTON R. SMITH
Notary Public, State of Illinois
My Commission Expires 8/11/2003
```

_[signature]_

NOTARY

August 3, 2001

Page **five** of **five**.

DEPARTMENT OF JUSTICE
Bureau of Prisons

INMATE INJURY ASSESSMENT AND FOLLOW-UP
*(Medical)*

| 1. Institution | 2. Name of Injured | 3. Register Number |
|---|---|---|
| USP Allenwood PA | Newman, Emanual | 13418-039 |

| 4. Injured's Duty Assignment | 5. Housing Assignment | 6. Date and Time of Injury |
|---|---|---|
| F/S | III A | 4/16/99   1300 |

| 7. Where Did Injury Happen *(Be specific as to location)* | Work Related? | 8. Date and Time Reported for Treatment |
|---|---|---|
| Dishroom, F/S | ☒ Yes   ☐ No | 4/16/99   1305 |

**9. Subjective:** *(Injured's Statement as to How Injury Occurred)(Symptoms as Reported by Patient)*

I was attacked and hit on the head numerous time
with a metal

*Signature of Patient*

**10. Objective:** *(Observations or Findings from Examination)*     X-Rays Taken _____     Not Indicated _____

X-Ray Results

① 8-10cm laceration on the
head (occipit area), actively bleeding, I/m conscious, oriented in time
& space. pupils equal & reactive.    Temp-99.5F°   Pulse-100/min   Soft O₂
& nausea & vomiting, ears-i/nl   mouth-WNL
BP-140/95mmHg
ecchymosis ® forearm, ① arm (inner) and ① infraorbital region

**11. Assessment:** *(Analysis of Facts Based on Subjective and Objective Data)*

Contusion (Head trauma) 2° assault

**12. Plan:** *(Diagnostic Procedures with Results, Treatment and Recommended Follow-up)*

① Sutured ⊂ 2-0 silk (controlled bleeding) applied pressure

② X-rays (Skull AP/lateral) ③ Evaluated by Dr Lee

**13. This Injury Required:**

☐ a. No Medical Attention

☐ b. Minor First Aid

☐ c. Hospitalization

☐ d. Other *(explain)*
___Suture___
_____

☐ e. Medically Unassigned

☐ f. Civilian First Aid Only

☐ g. Civilian Referred to
Community Physician

A Boterus PA

*Signature of Nurse or Physician Assistant*
A Boterus PA
Physician Assistant



*Self Carbonized Form - If ballpoint pen is used, PRESS HARD*



DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**INMATE INJURY ASSESSMENT AND FOLLOWUP**
*(Medical)*

| 1. Institution | 2. Name of Injured | 3. Register Number |
|---|---|---|
| USP- ALLENWOOD | NEWMAN, EMANUEL | 13418-039 |

| 4. Injured's Duty Assignment | 5. Housing Assignment | 6. Date and Time of Injury |
|---|---|---|
| F/S PM | 3A    C-132 | 5-14-99    1700 |

| 7. Where Did Injury Happen *(Be specific as to location)* | Work Related? | 8. Date and Time Reported for Treatment |
|---|---|---|
| 3A - OFFICERS STATION | ☐ Yes  ☒ No | 5-14-99    1730 |

9. Subjective: *(Injured's Statement as to How Injury Occurred)(Symptoms as Reported by Patient)*

" HE JUST STARTED HITTING ME!"

X HANDCUFFED.
_Signature of Patient_

10. Objective: *(Observations or Findings from Examination)*

POST- ASSAULT → (L) EYE SWOLLEN SHUT, BRUISING/ECCHY ABOUT ENTIRE FOREHEAD (SWOLLEN), SMALL BRUISE ON (R) UPPER CHEST/BREAST AREA, (R) F.A. 2" SCRAPES, (L) ARM/ELBOW ABRASION, SCRAPE IN FRONT OF (R) EAR AREA, SCRAPE ON (L) KNEE. ⊖ TRAUMA NOTED TO HANDS. ⊙ OTHER GROSS TRAUMA TO NOSE OR ORAL CAVITY.

X-Rays Taken _____  Not Indicated ☒
X-Ray Results

11. Assessment: *(Analysis of Facts Based on Subjective and Objective Data)*

A&O, AMBULATES w/ NO DIFFICULTY, SPEAKS CLEARLY, MULTIPLE TRAUMA TO FACIAL AREA, ORAL CAVITY INTACT, LITTLE TO NO EXT. HEMM. WATCH FOR ↓ LOC!

12. Plan: *(Diagnostic Procedures with Results, Treatment and Recommended Follow-up)*

① FULL VISUAL ASSESSMENT.
② GIVE I/M ICE WHILE IN SHU.
③ ISSUE X 8  200 MG MOTRIN Impact IVR IF NO ↓ IN LOC
④ ADVISE STAFF PROMPTLY IF ANY Δ. SHU PA TO F/U ON MON.

13. This Injury Required:

☐ a. No Medical Attention
☒ b. Minor First Aid
☐ c. Hospitalization
☐ d. Other *(explain)*

_____
_____

☐ e. Medically Unassigned
☐ f. Civilian First Aid Only
☐ g. Civilian Referred to Community Physician

_Signature of Physician or Physician Assistant_

L. T. RARICK, EMT-P
USP ALLENWOOD



SCRAPE
BRUISING/SWELLING GROSS ECCHY.
SWOLLEN SHUT ECCHY X.
SCRAPES
ABRASIONS
SMALL BRUISE
ABRASIONS

Self Carboned Form – If ballpoint pen is used. PRESS HARD

SUNG K. LEE, M.D.
USP ALLENWOOD

Original – Medical File
Canary – Safety
Pink – Work Supervisor *(Work related only)*

HEALTH SERVICES                          JULY 7, 1999

MAY I SEE AN EYE DOCTOR, BECAUSE

I'M HAVING TROUBLE WITH MY VISION.

EMANUEL T. NEWMAN                    13418-039

SEG / AD                         CELL # 110

October 28, 1999

0: HEALTH DEPARTMENT

MAY I PLEASE SEE AN EYE DOCTOR

ABOUT THE SPOTS IN MY VISION

AND MY EYE HURTS

EMANUEL T. NEWMAN                    13418-034

Ad /SEG                    CELL/113

INMATE REQUEST TO STAFF MEMBER

UNITED STATES DEPARTMENT OF JUSTICE    FEDERAL BUREAU OF P

DATE _12/4/_

TO: _Health Service Dept_

SUBJECT: State completely but briefly the problem on which
desire assistance and what you think should be done. Give
details.

_I'm Requesting To Be Seen By An_

_Ophthalmologist. My Left Eye Received Damage_

_During An Assault on April 6, 1990 And Again_

_On May 14, 1990._

_I have sent a number of prior request that_

_Health Services has failed to respond to._

_I have a large number of Reddish Brown Spots_

_In the field of vision of my left Eye, And_

_What seems like showers of sparking spots._

NAME: _EMANUEL T. NEWMAN_    No.: _13818-_

Work Assignment: _C. M. S._    Unit: _3-E_

DISPOSITION:    DATE _12/20/04_

You are on the waiting list for evaluation
by the Optometrist. Watch
the call-outs.





### U.S. DISTRICT COURT
### MIDDLE DISTRICT OF
### PENNSYLVANIA

EMANUEL THOMAS NEWMAN,

       Plaintiff,

Vs.

Ronald L. Jury, LT, SIS, ET AL.,

       Defendant,

Civil No.: 1:CV-01-0677

(Rambo, Judge)

### CERTIFICATE OF SERVICE BY MAIL

    The undersigned plaintiff hereby certifies that persuant to 28 U.S.C. § 1746, the following is true.

    That I, Emanuel Thomas Newman, have placed sufficient postage for First Class mailing to all the defendant's via their attorney upon who I am serviing all documents. (PLAINTIFF'S AFFidaViT)

This _10 Th_ day of _AUGUST_ 2001.

By, _Emanuel Thomas Newman_

    Emanuel Thomas Newman 13418-039
    P.O. Box 5000
    Pekin, Illinois 61555-5000

COPIES TO:     U.S. Attorney               Clerk Of The Court
                 316 Federal Building     U.S. District Court
                 240 West Third Street    228 Walnut Street
                 Williamsport, PA 17703   P.O. Box 983
                                          Harrisburg, PA 17108