TAM:MEM:mel:2001V00411

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMANUEL THOMAS NEWMAN, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil No. 1:CV-01-0677 |
| | : | (Conner, J.) |
| RONALD L. JURY, Lieutenant, | : | |
| SIS, et al., | : | **FILED ELECTRONICALLY** |
| Defendants | : | |

<u>**DEFENDANTS' EXHIBITS IN OPPOSITION TO**</u>
<u>**PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME**</u>
<u>**IN WHICH TO COMPLETE DISCOVERY**</u>

THOMAS A. MARINO
United States Attorney

<u>s/Mark E. Morrison</u>
MARK E. MORRISON
Assistant U.S. Attorney
Atty. I.D. No. PA43875
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17701
Phone:  717-221-4482
Fax: 717-221-2246

Date: May 23, 2003

**EXHIBIT**

1

In the United States District Court
For the Middle District Of Pennsylvania

Emanuel T. Newman,
        Plaintiff,

        -Vs-

Ronald Jury, et. al.,

CASE No. 1:CV-01-0677

## INTERROGATORIES

--------------------

**Comes Now,** Emanuel Thomas Newman, Plaintiff pro-se (hereinafter Plaintiff), and propoundes the following interrogatories to defendant James White (hereinafter defendant) pursuant to federal rules of civil procedure.

Furthermore, said defendant is hereby directed to answer the same fully in writing under oath within the time provided by the federal rules of procedure.

1) List by name and address all penal institutions that you have worked at over the past five years?

2) List separately for each institution enumerated in your answer to question # 1 the following data:

a. Positions that you have held while working at said institutions.

b. List separately the number of D.C. prisoners known personally by you at those institutions.

c. List separately the number of violent incidents that you have witnessed while working at said institutions, fights, stabbings, pipings, rapes, etc...

3) What is the official Bureau Of Prisons policy/procedure for the separation of inmates after there has been a violent confrontation between them?

4) List separately the following concerning your answer to question # 3:

a. What is the official Bureau Of Prisons policy concerning the removal of an inmate from the general institution population once a threat has come to the attention of the prison administration?

-1-

b. What is the official Bureau Of Prisons policy for the removal of an inmate from the general institution, who has been violently assaulted and makes the prison administration aware of a serious violent threat against his person by members of a prison gang?

c. What is the official Bureau Of Prisons policy for dealing with gang threats of violence against non-gang member inmates?

d. What is the Official Bureau Of Prisons policy for dealing with violent D.C. (Washington, D.C.) inmates who organize themselves under the title  D.C. Boys?

e. What is the official Bureau Of Prisons Policy for when prison administration is informed by inmate informants about threats against another inmate.

f. Once the administration has confirmed a threat of violence as being real in nature, and made this known to the inmate against whom the threats are made, what is the procedure?

g. Under the circumstances listed in question # 4, sections a, b, c, d, e,  and f, would the inmate against whom said threats are made be removed from the general prison population and placed into protective custody?

h. If the inmate against whom the threats are made refused to be placed in protective custody is there a waiver that said inmate would have to sign?

i. What is the official Bureau Of Prisons policy concerning a waiver of protective custody?

j. Was the plaintiff in this case given a waiver to sign, and if so what is the name of the prison staff person who witnessed him sign said document?

k. If the threat made against an inmate is gang related, and serious in nature (stabbing, murder etc..) would the official Bureau Of Prisons Policy cause said inmate to be removed from the institutions general population without his consent even if he requested to sign a waiver?

l. Has anyone instructed you on how to respond to these or anyother questions that this plaintiff might ask in relation-ship to the now pending civil suit?

m. Did you or any of the other defendants get together and decided what would be said in response to the questions asked or that might be asked later?

n. Why was the plaintiff allowed to remain in the general population after he had been seriously assaulted once, and he himself made the prison administration aware of threats against his life by the gang known as the D.C. Boys, because it was felt that the first assault/attack was a failed attempt?

5) Did you, defendant James White have the plaintiff sent to your office to speak with you concerning his insistence that threats had been made against his life by inmate Kevin Tensely, who was a member of the D.C. Boys prison gang on or about the week of May 10th, 1999?

6) List separately the following concerning your answer to question # 5.

a. State specifically why you had the plaintiff called to see you during the week of May 10th, 1999.

b. Did you make any notes before, during or after the meeting with the plaintiff during the week of May 10th, 1999?

c. If notes were made , state specifically what those notes consist of concerning your conversation with the plaintiff.

d. After the plaintiff explained to you that inmate Kevin Tensley had been the orchestrator of the April 16, 1999 assault on him, that he had received word that Tensley was offering a bounty to any of the "D.C. Boys" who would stab, beat, pipe, or murder plaintiff, what is the official Bureau Of Prisons Policy that should have been taken?

e. What action did you take, and why?

f. Were you aware at the time of the May 10th, 1999 meeting with the plaintiff, that he had been assaulted a metal weapon that was shaped like an ax, and had received a serious wond that caused him to stay in the prison hospital for 5 days?

g. Please give any and all specific details concerning your answer to question # 6, item f.

h. If there is a serious threat to an inmates safety that is brought to the administrations attention, can that inmate refuse to be placed into protective custody? Gives full details.

i. Are there any waiver forms that would have to be sign if he refused to be place into protective custody, after serious threats had been brought to the attention of the administration to remove their liability? Please give complete details.

j. When once you confirmed that a threat had been against the plaintiff, and that the threat was in fact very serious and real, why didn't you have the plaintiff placed into protective custody right then and there, regardless of anything that the plaintiff might have wanted?

k. Did you interview inmate Kevin Tensley before, during or after the week of May 10th, 1999 concerning matters brought to you attention by the plaintiff or anyone else?

l. Concerning question # 6, item k, what was the nature of the interview with inmate Tensley, give full details.

-3-

m. Did you interview any other inmates concerning the matters brought to your attention concerning threats made against the plaintiff, before, during or after the May 10th, 1999 meeting with the plaintiff, please give full details?

n. On May 14th, 1999, an incident report was issued against inmate Kevin Tensley for the assault against the plaintiff with a weapon, and for fighting with and assaulting a correctional officer. Why was the incident report later expunged and inmate transferred to a lower security Federal Correctional Institution; give full details?

o. Why was inmate Kevin Tensley paid a sum of money by the Bureau of Prisons, along with having the May 14th, 1999 incident report expunged, and being transferred to a lower security Federal Security Institution; give full details?

7) Is there any information that is directly or indirectly known by about the incident report(s) issued, moneies paid, or transferr(s) concerning the complaint made by the plaintiff in this case, which you have not disclosed?

8) Please give full and complete details to your answer to question number **7.**

Therefore, plaintiff submits his interrogatories in good faith, and seek a reply from the defendant named within the time allotted in the Federal Rules Of Civil Procedure.

Respectfully submitted by

Emanuel Thomas Newman
13418-039
F.C.I. PEKIN
P.O. BOX 5000 (MO-1)
PEKIN, ILL 61555-5000

10/5/01

-4-

U.S. DISTRICT COURT
MIDDLE DISTRICT OF
PENNSYLVANIA

EMANUEL THOMAS NEWMAN,
             Plaintiff,

Civil No.: 1:CV-01-0677

Vs.

(Rambo, Judge)

Ronald L. Jury, LT, SIS, ET AL.,
             Defendant,

## CERTIFICATE OF SERVICE BY MAIL

The undersigned plaintiff hereby certifies that persuant to 28 U.S.C. § 1746, the following is true.

That I, Emanuel Thomas Newman, have placed sufficient postage for First Class mailing to all the defendant's via their attorney upon who I am serving all documents. (INTERROGATORIES)

This __5 Th__ day of __October__ 2001.

By, _Emanuel Thomas Newman_
     Emanuel Thomas Newman 13418-039
     P.O. Box 5000
     Pekin, Illinois 61555-5000

COPIES TO:    U.S. Attorney                Clerk Of The Court
              316 Federal Building          U.S. District Court
              240 West Third Street         228 Walnut Street
              Williamsport, PA 17703        P.O. Box 983
                                            Harrisburg, PA 17108

**EXHIBIT**

2

Emanuel T. Newman,
      Plaintiff,

      -Vs-

Ronald Jury, et. al.,

CASE NO. 1:CV-01-0677

## INTERROGATORIES

--------------------

    **Comes Now,** Emanuel Thomas Newman, Plaintiff pro-se (hereinafter Plaintiff), and propounds the following interrogatories to defendant Lewis Caprio (hereinafter defendant) pursuant to federal rules of civil procedure.

    Furthermore, said defendant is hereby directed to answer the same fully in writing under oath within the time provided by the federal rules of procedure.

    1) List by name and address all penal institutions that you have worked at over the past five years?

    2) List separately for each institution enumerated in your answer to question # 1 the following data:

        **a.** Positions that you have held while working at said institutions.

        **b.** List separately the number of D.C. prisoners known personally by you at those institutions.

        **c.** List separately the number of violent incidents that you have witnessed while working at said institutions, fights, stabbings, pipings, rapes, etc...

    3) What is the official Bureau Of Prisons policy/procedure for the separation of inmates after there has been a violent confrontation between them?

    4) List separately the following concerning your answer to question # 3:

        **a.** What is the official Bureau Of Prisons policy concerning the removal of an inmate from the general institution population once a threat has come to the attention of the prison administration?

-1-

b. What is the official Bureau Of Prisons policy for the removal of an inmate from the general institution, who has been violently assaulted and makes the prison administration aware of a serious violent threat against his person by members of a prison gang?

c. What is the official Bureau Of Prisons policy for dealing with gang threats of violence against non-gang member inmates?

d. What is the Official Bureau Of Prisons policy for dealing with violent D.C. (Washington, D.C.) inmates who organize themselves under the title  D.C. Boys?

e. What is the official Bureau Of Prisons Policy for when prison administration is informed by inmate informants about threats against another inmate.

f. Once the administration has confirmed a threat of violence as being real in nature, and made this known to the inmate against whom the threats are made, what is the procedure?

g. Under the circumstances listed in question # 4, sections a, b, c, d, e,  and f, would the inmate against whom said threats are made be removed from the general prison population and placed into protective custody?

h. If the inmate against whom the threats are made refused to be placed in protective custody is there a waiver that said inmate would have to sign?

i. What is the official Bureau Of Prisons policy concerning a waiver of protective custody?

j. Was the plaintiff in this case given a waiver to sign, and if so what is the name of the prison staff person who witnessed him sign said document?

k. If the threat made against an inmate is gang related, and serious in nature (stabbing, murder etc..) would the official Bureau Of Prisons Policy cause said inmate to be removed from the institutions general population without his consent even if he requested to sign a waiver?

l. Has anyone instructed you on how to respond to these or anyother questions that this plaintiff might ask in relation-ship to the now pending civil suit?

m. Did you or any of the other defendants get together and decided what would be said in response to the questions asked or that might be asked later?

n. Why was the plaintiff allowed to remain in the general population after he had been seriously assaulted once, and he himself made the prison administration aware of threats against his life by the gang known as the D.C. Boys, because it was felt that the first assault/attack was a failed attempt?

5) Did you, defendant Louis Caprio have plaintiff sent to speak with you concerning his insistence that threats had been made against his life by inmate Kevin Tensley, who was a member of the D.C. Boys prison gang on May 9, 1999?

6) List separately the following concerning you answer to question # 5:

a. State specifically why the plaintiff was called to see you on May 9, 1999.

b. Did you make any notes during the conversation with the plaintiff?

c. If you did make notes of that meeting, state in a brief summary what is contained in those notes.

d. After the plaintiff explained that Kevin Tensley had been the orchestrator of the April 16, 1999 assault on him, and that he had received word that Tensley was offering to pay any member or members of the D.C. Boys who would stab, beat, pipe, or murder plaintiff, what was the official Bureau Of Prisons policy that should have been taken?

e. What action was taken by you, and why?

f. Were you, defendant Louis Caprio present on April 16, 1999 when the first assault was made on the plaintiff?

g. Did you witness plaintiff being taken to the prison hospital on a gurney passed out, and was he bleeding profusely from a gash in his head?

h. Did you, defendant Louis Caprio talk with defendant James White concerning the meeting with the plaintiff on May 9, 1999?

i. Did defendant James White offer to investigate the matter of the threat against Pleaintiff, or was he instructed to do so by you or anyone else to your knowledge?

j. Did defendant James White offer to interview the plaintiff concerning the threats to his person or was he instructed to so by you or anyone else to you knowledge?

k. If a middle aged non-violent, non-gang member inmate is sent to see you, and said inmate who was assaulted seriously within three weeks from meeting, with his face and body still brused, and a bandage covering his entire head, because of a gash that took 21 stiches to close, and this inmate states that he has received good word that there is a serious threat to his life from the D.C. Boy prison gang, because it is felt that the prior assault was a failure, what action would personally take in this matter to ensure that inmate's safety?

-3-

m. Did you interview any other inmates concerning the matters brought to your attention concerning threats made against the plaintiff, before, during or after the May 10th, 1999 meeting with the plaintiff, please give full details?

n. On May 14th, 1999, an incident report was issued against inmate Kevin Tensley for the assault against the plaintiff with a weapon, and for fighting with and assaulting a correctional officer. Why was the incident report later expunged and inmate transferred to a lower security Federal Correctional Institution; give full details?

o. Why was inmate Kevin Tensley paid a sum of money by the Bureau of Prisons, along with having the May 14th, 1999 incident report expunged, and being transferred to a lower security Federal Security Institution; give full details?

7) Is there any information that is directly or indirectly known by about the incident report(s) issued, moneies paid, or transferr(s) concerning the complaint made by the plaintiff in this case, which you have not disclosed?

8) Please give full and complete details to your answer to question number 7.

Therefore, plaintiff submits his interrogatories in good faith, and seek a reply from the defendant named within the time allotted in the Federal Rules Of Civil Procedure.

Respectfully submitted by _Emanuel Thomas Newman_

Emanuel Thomas Newman
13418-039
F.C.I. PEKIN
P.O. BOX 5000 (MO-1)
PEKIN, ILL 61555-5000

10/5/01

-4-

U.S. DISTRICT COURT
MIDDLE DISTRICT OF
PENNSYLVANIA

EMANUEL THOMAS NEWMAN,

      Plaintiff,

Vs.

Ronald L. Jury, LT, SIS, ET AL.,

      Defendant,

Civil No.: 1:CV-01-0677

(Rambo, Judge)

## CERTIFICATE OF SERVICE BY MAIL

The undersigned plaintiff hereby certifies that persuant to 28 U.S.C. § 1746, the following is true.

That I, Emanuel Thomas Newman, have placed sufficient postage for First Class mailing to all the defendant's via their attorney upon who I am serviing all documents. (INTERROGATORIES)

This _5TH_ day of _OCTOBER_ 2001.

By, _Emanuel Thomas Newman_
    Emanuel Thomas Newman 13418-039
    P.O. Box 5000
    Pekin, Illinois 61555-5000

COPIES TO:    U.S. Attorney
        316 Federal Building
        240 West Third Street
        Williamsport, PA 17703

Clerk Of The Court
U.S. District Court
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17108

**EXHIBIT**

3

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMANUEL THOMAS NEWMAN,            :
      Plaintiff            :
                           :  CIVIL NO. 1:CV-01-0677
      v.                   :  (Rambo, J.)
                           :
RONALD L. JURY, Lieutenant,       :
SIS, et al.,                      :
      Defendants           :

## DEFENDANT WHITE'S OBJECTIONS AND RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

COMES NOW Defendant Jimmie White, and respectfully submit his objections and response pursuant to Rule 33(b), of the *Federal Rules of Civil Procedure*, to Plaintiff's First Set of Interrogatories and states as follows:

1.     List by name and address all penal institutions that you have worked at over the past five years?

      <u>Response</u>:    The United States Penitentiary, Lompoc; the United States Penitentiary, Atlanta; and the United States Penitentiary, Allenwood.

2.     List separately for each institution enumerated in your answer to question #1 the following data:

1

a. Positions that you have held while working at said institutions.

**Response**:  USP Lompoc, Correctional Officer; USP Atlanta, Senior Officer Specialist; and USP Allenwood, Lieutenant.

b. List separately the number of D.C. prisoners known personally by you at those institution.

**Response**: Defendant objects in that the request is overly broad and irrelevant.

c. List separately the number of violent incidents that you have witnessed while working at said institutions, fights, stabbing, piping, rapes, etc. . .

**Response:**  Objection.  The request is overly broad, unduly burdensome, and irrelevant to this proceeding. Without waiving this objection, over the past five years although I have personally witnessed approximately ten (10) inmate fights, I have not personally witnessed any stabbings, pipings or rapes.  I have, however responded to the scenes of approximately five (5) alleged rapes, to approximately ten (10 ) stabbing incidents times and to approximately twenty five (25)  inmate assaults/fights during this same time frame.

3.    What is the official Bureau of Prisons policy/procedure for the separation of inmates after there has been a violent confrontation between them?

2

**Response:**    All inmates identified as having been involved in an altercation are placed in the institution's Special Housing Unit in an administrative detention status pending investigation.

4.    List separately the following concerning your answers to #3.

a. What is the official Bureau of Prisons policy concerning the removal of an inmate from the general institution population once a threat has come to the attention of the prison administration?

**Response:**    It is my understanding that if staff are made aware of a threat to a particular inmate(s), that individual is to placed in the institution's Special Housing Unit in an administrative detention status pending investigation.

b. What is the official Bureau of Prisons policy for the removal of an inmate from the general institution, who has been violently assaulted and makes the prison administration aware of a serious violent threat against his person by members of a prison gang?

**Response:**    It is my understanding that if an inmate is "violently" assaulted, after receiving the appropriate medical care, that inmate is placed in the institution's Special Housing Unit in an administrative detention status pending investigation.

3

c.  What is the official Bureau of Prisons policy for dealing with gang threats of violence against non-gang member inmates.?

**Response:**    It is my understanding that all threats of violence by any inmates towards any other inmates are to be referred to the appropriate staff member and investigated.

d.    What is the official Bureau of Prisons policy for dealing with violent D.C. (Washington D.C.) inmates who organize themselves under the title of D.C. Boys?

**Response:**    I am not aware of any policy for dealing with a group of inmates called the "D.C. Boys".

e.    What is the official Bureau of Prisons Policy for when prison administration is informed by inmate informants about threats against another inmate.

**Response:**    It is my understanding that any information regarding a threat to the safety of any inmate(s) is to be referred and investigated in order to determine whether the threat is valid.  If the threat is determined to be valid, appropriate steps are then taken to remove the threat.

4

f.    Once the administration has confirmed a threat of violence as being real in nature, and made this known to the inmate against whom the threats are made, what is the procedure?

**Response:**    It is my understanding that the inmates involved are separated, and that appropriate actions are taken to remove the threat such as initiating a criminal investigation, taking disciplinary action, transferring the inmates involved, etc., in order to remove the threat.

g.    Under the circumstances listed in question #4, section a, b, c, d, e, and f, would the inmate against whom said threats are made be removed from the general prison population and placed into protective custody?

**Response:**    Without knowing the facts surrounding the threat, I am not able to respond to this interrogatory.

h.    If the inmate against whom the threats are made refused to be placed in protective custody is there a waiver that said inmate would have to sign?

**Response:**    I am not aware of a waiver.

i.    What is the official Bureau Of Prisons policy concerning a waiver of protective

custody?

**Response**:    I am not aware of any such policy.

j.    Was the plaintiff in this case given a waiver to sign, and if so what is the name of the prison staff person who witnessed him sign said document.?

**Response**:    I have no knowledge if the Plaintiff was given a waiver to sign, nor do I know if any other staff member asked the Plaintiff to sign such a form.

k.    If the threat made against an inmate is gang related, and serious in nature (stabbing, murder etc...) would the official Bureau of Prisons Policy cause said inmate to be removed from the institutions general population without his consent even if he requested to sign a waiver?

**Response**:    I am not aware of any such "waiver". Additionally, it is my understanding that steps would be taken to remove the threat. These steps may include the removal of the intended victim from the institution's population.

l.    Has anyone instructed you on how to respond to these or anyother{sic} questions that this plaintiff might ask in relationship to the now pending civil lawsuit?

6

**Response**:    No, however, I did receive advice and counsel from legal staff at the institution..

m.    Did you or any of the other defendant get together and decided what would be said in response to the questions asked or that might be asked later?

**Response**:    No.

n.    Why was the plaintiff allowed to remain in the general population after he had been seriously assaulted once, and he himself made the prison administration aware of threats against his life by the gang known as the D.C. Boys, because it was felt that the first assault/attack was a failed attempt?

**Response**:    I do not know why the Plaintiff was "allowed to remain in the general population". Additionally, I note that the Plaintiff did not inform me that his life was in danger or that threats were made against his life by a group of inmates he refers to as the "D.C. Boys".

5.    Did you, defendant James White have the plaintiff sent to your office to speak with you concerning his insistence that threats had been made against his life by inmate Kevin Tensely, who was a member of the D.C. Boys prison gang on or about May 10, 1999?

**Response**:     No.

6.     List separately the following concerning your answer to question #5.

a.  State specifically why you had the Plaintiff called to see you during the week of May 10, 1999?

**Response**:     I did not have the Plaintiff called to my office during the week of May 10, 1999.

b.  Did you make any notes before, during or after the meeting with the plaintiff during the week of May 10, 1999?

**Response**:     Since I did not meet with the Plaintiff, I would not have prepared any notes of the alleged meeting.

c.  If notes were made, state specifically what those notes consist of concerning your conversation with the plaintiff.

**Response**:     No such notes were prepared.

d.  After the plaintiff explained to you that inmate Kevin Tensely had been the orchestrator of the April 16, 1999 assault on him, that he had received word that Tensely was

offering a bounty to any of the D.C. Boys who would stab, beat, pipe or murder plaintiff, what is the official Bureau of Prisons policy that should have been taken?

**Response**:    The Plaintiff did not inform me that inmate Kevin Tensley was behind the April 16, 1999 incident, or that inmate Tensley was offering a bounty to any of the "D.C. Boys" to stab, pipe or murder the Plaintiff. If I had been made aware of any such threat, I would have immediately taken steps to remove the threat.

e. What action did you take, and why?

**Response**:    I had no knowledge of any threat and the Plaintiff did not inform me that inmate Tensley was behind the April 16, 1999 incident, or that inmate Tensely was offering a bounty to any of the D.C. boys to stab, pipe or murder the Plaintiff. Therefore, I do not believe that I took any action.

f. Were you aware at the time of the May 10, 1999 meeting with the plaintiff, that he had been assaulted [sic] a metal weapon that was shaped like an ax, and had received a serious wond {sic} that caused him to stay in the prison hospital for 5 days?

**Response**:    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule

9

33(a). Without waiving this objection, the Defendant responds as follows: I do not recall meeting with the Plaintiff on May 10, 1999.

g. Please give any and all specific details concerning your answer to question #6, item f.

**Response**:    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule 33(a). Without waiving this objection, the Defendant responds as follows: See response to interrogatory 6(f), above.

h. If there is a serious threat to an inmates safety that is brought to the administrations attention, can that inmate refuse to be placed into protective custody? Give full details.

**Response**:    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule 33(a). Without waiving this objection, the Defendant responds as follows: No.

i.    Are there any waiver forms that would have to be sign [sic] if he refused to be place into protective custody, after serious threats had been brought to the attention of the administration to remove their liability? Please give complete details.

10

**Response:**    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule 33(a). Without waiving this objection, the Defendant responds as follows: I am not aware of any waiver forms.

j.    When once you confirmed that a threat had been (sic) against the plaintiff, and that the threat was in fact very serious and real, why didn't you have the plaintiff placed into protective custody right then and there, regardless of anything that the plaintiff might have wanted?

**Response:**    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule 33(a). Without waiving this objection, the Defendant responds as follows: I had no knowledge of any threat against the plaintiff.

k.    Did you interview inmate Kevin Tensely before, during or after the week of May 10, 1999 concerning matters brought to your attention by the plaintiff or anyone else?

**Response:**    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule 33(a). Without waiving this objection, the Defendant responds as follows:

11

No.

l.    Concerning question #6, item k, what was the nature of the interview with inmate
       Tensely, give full details.

**Response**:    Defendant respectfully objects to this interrogatory as it is beyond the

requisite number permitted by the Federal Rules of Civil Procedure, Rule

33(a).  Without waiving this objection, the Defendant responds as follows:

I did not interview inmate Tensley.

m.    Did you interview any other inmates concerning the matters brought to your

attention concerning threats made against the plaintiff, before, during or after the

May 10, 1999 meeting with the plaintiff, please give full details?

**Response**:    Defendant respectfully objects to this interrogatory as it is beyond the

requisite number permitted by the Federal Rules of Civil Procedure, Rule

33(a).  Without waiving this objection, the Defendant responds as follows:

I did not meet with the Plaintiff on May 10, 1999; therefore, I did not

interview any inmates.

n.    On May 14, 1999, an incident report was issued against inmate Kevin Tensley for

the assault against with a weapon, and for fighting with and assaulting a

12

correctional officer. Why was the incident report later expunged and inmate

transferred to a lower security Federal Correctional Institution; give full details?

**Response**:    Defendant respectfully objects to this interrogatory as it is beyond the

requisite number permitted by the Federal Rules of Civil Procedure, Rule

33(a). Additionally, the Defendant objects to the release of any such

information regarding another inmate without an appropriate signed

authorization to release the information since the release of such

information may violate the Privacy Act.

o.    Why was inmate Tensley paid a sum of money by the Bureau of Prisons, along

with having the May 14, 1999 incident report expunged, and being transferred to a

lower security Federal Security Institution; give full details?

**Response**:    Defendant respectfully objects to this interrogatory as it is beyond the

requisite number permitted by the Federal Rules of Civil Procedure, Rule

33(a). Additionally, the Defendant objects to the release of any such

information regarding another inmate without an appropriate signed

authorization to release the information since the release of such

information may violate the Privacy Act.

7.    Is there any information that is directly or indirectly known by about the incident report(s)

issued, moneies {sic} paid, or transferr(s) {sic} concerning the complaint made by the plaintiff in this case, which you have not disclosed?

**Response:**    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule 33(a). Without waiving this objection, the Defendant responds as follows: I have no information on that subject.

8.    Please give full and complete details to your answer to question number 7.

**Response:**    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule 33(a). Without waiving this objection, the Defendant responds as follows: See response to interrogatory number seven (7), above.

14

EXECUTED this _____19_____ day of November, 2001.

Answers by :

JIMMIE WHITE
Lieutenant
United States Penitentiary
White Deer, PA  17887


Objections By:

MARTIN C. CARLSON
United States Attorney


for    MARK E. MORRISON
Assistant United States Attorney
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17703

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMANUEL T. NEWMAN,              )
          Plaintiff            )        CIVIL NO.  1:CV-01-0677
                               )
      v.                       )        JUDGE RAMBO
                               )
RONALD JURY, et. al,           )
          Defendants           )

## VERIFICATION

I, Jimmie White, hereby state, pursuant to the penalties of perjury set forth at 28 U.S.C. §1746,  that I have read "Defendant's Supplemental Response to Plaintiff's First Set of Interrogatories," and that the foregoing is true and correct.

JIMMIE WHITE
Lieutenant
U.S.P. Allenwood

Executed on this  19  day of November, 2001.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMANUEL THOMAS NEWMAN,           :
            Plaintiff           :
                                :    CIVIL NO. 1:CV-01-0677
        v.                      :    (Rambo, J.)
                                :
RONALD L. JURY, Lieutenant,     :
SIS, et al.,                    :
            Defendants          :

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that he is an employee with the Federal Bureau of Prisons and is a person of such age and discretion as to be competent to serve papers.

That on November 19, 2001, he served a copy of the attached

## DEFENDANT WHITE'S OBJECTIONS AND RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Northumberland, Pennsylvania.

Addressee:

Emanuel Thomas Newman
Reg. No. 13418-039
FCI Pekin
P.O. Box 5000
Pekin, Illinois 61555-5000

JEFF FROMM
Paralegal Specialist



EXHIBIT

4

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMANUEL THOMAS NEWMAN,             :
      Plaintiff                        :
                                    :    CIVIL NO. 1:CV-01-0677
      v.                               :    (Rambo, J.)
                                      :
RONALD L. JURY, Lieutenant,        :
SIS, et al.,                       :
            Defendants            :

## DEFENDANT CAPRIO'S OBJECTIONS AND RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

COMES NOW Defendant Louis Caprio, and respectfully submit his objections and response pursuant to Rule 33(b) of the *Federal Rules of Civil Procedure*, to Plaintiff's First Set of Interrogatories and states as follows:

1.    List by name and address all penal institutions that you have worked at over the past five years.

    **Response**:    United States Penitentiary, Allenwood, Pennsylvania.

2.    List separately for each institution enumerated in your answer to question #1 the following data:

    a.  Positions that you have held while working at said institutions.

    **Response**:    Senior Officer Specialist from 1993 to 1998.

                       Lieutenant from 1998 to the present.

1

b. List separately the number of D.C. prisoners known personally by you at those institutions.

**Response**:    Defendant objects in that the request is overly broad and irrelevant.

c. List separately the number of violent incidents that you have witnessed while working at said institutions, fights, stabbings, pipings, rapes, etc. . .

**Response:**    Objection.  The request is overly broad, unduly burdensome, and irrelevant to this proceeding. Without waiving this objection, over the past five years although I have personally witnessed approximately ten (10) inmate fights, I have not personally witnessed any stabbings, pipings or rapes.  I have, however responded to the scenes of stabbing incidents approximately three (3) times, to one "piping" incident and to approximately twenty (20) to twenty five (25)  inmate assaults/fights during this same time frame.

3.    What is the official Bureau of Prisons policy/procedure for the separation of inmates after there has been a violent confrontation between them?

**Response:**    All inmates identified as having been involved in an altercation are placed in the institution's Special Housing Unit in an administrative detention status pending investigation.

2

4.      List separately the following concerning your answers to question #3.

  a.  What is the official Bureau of Prisons policy concerning the removal of an inmate from the general institution population once a threat has come to the attention of the prison administration?

  **Response**:  It is my understanding that if staff are made aware of a threat to a particular inmate(s), that individual is to placed in the institution's Special Housing Unit in an administrative detention status pending investigation.

  b.  What is the official Bureau of Prisons policy for the removal of an inmate from the general institution, who has been violently assaulted and makes the prison administration aware of a serious violent threat against his person by members of a prison gang?

  **Response**:  It is my understanding that if an inmate is "violently" assaulted, after receiving the appropriate medical care, that inmate is placed in the institution's Special Housing Unit in an administrative detention status pending investigation.

  c.  What is the official Bureau of Prisons policy for dealing with gang threats of violence against non-gang member inmates?

3

**Response:**    It is my understanding that all threats of violence by any inmates towards any other inmates are to be referred to the appropriate staff member and investigated.

d.    What is the official Bureau of Prisons policy for dealing with violent D.C. (Washington D.C.) inmates who organize themselves under the title D.C. Boys?

**Response:**    I am not aware of any policy for dealing with a group of inmates called the "D.C. Boys".

e.    What is the official Bureau of Prisons Policy for when prison administration is informed by inmate informants about threats against another inmate.

**Response:**    It is my understanding that any information regarding a threat to the safety of any inmate(s) is to be referred and investigated in order to determine whether the threat is valid. If the threat is determined to be valid, appropriate steps are then taken to remove the threat.

f.    Once the administration has confirmed a threat of violence as being real in nature, and made this known to the inmate against whom the threats are made, what is the procedure?

4

**Response:**   It is my understanding that the inmates involved are separated, and that appropriate actions are taken to remove the threat such as initiating a criminal investigation, taking disciplinary action, transferring the inmates involved, etc., in order to remove the threat.

g.   Under the circumstances listed in question #4, sections a, b, c, d, e, and f, would the inmate against whom said threats are made be removed from the general prison population and placed into protective custody?

**Response:**   Without knowing the facts surrounding the threat, I am not able to respond to this interrogatory.

h.   If the inmate against whom the threats are made refused to be placed in protective custody is there a waiver that said inmate would have to sign?

**Response:**   I am not aware of a waiver.

i.   What is the official Bureau of Prisons policy concerning a waiver of protective custody?

**Response:**   I am not aware of any such policy.

5

j.      Was the plaintiff in this case given a waiver to sign, and if so what is the name of
the prison staff person who witnessed him sign said document?

    **Response**:    I am not aware of any such waiver, nor do I know of any other staff
               member(s) asking the Plaintiff to sign any "waivers" or other forms.

k.      If the threat made against an inmate is gang related, and serious in nature
(stabbing, murder etc...) would the official Bureau of Prisons Policy cause said inmate to be
removed from the institutions general population without his consent even if he requested to sign
a waiver?

    **Response**:    It is my understanding that steps would be taken to remove the threat.
               These steps may include the removal of the intended victim from the
               institution's population.

l.      Has anyone instructed you on how to respond to these or anyother{sic} questions
that this plaintiff might ask in relationship to the now pending civil lawsuit?

    **Response**:    No, however, I did receive advice and counsel from the legal staff at the
               institution.

6

m.    Did you or any of the other defendants get together and decided{sic} what would be said in response to the questions asked or that might be asked later?

**Response**:    No.

n.    Why was the plaintiff allowed to remain in the general population after he had been seriously assaulted once, and he himself made the prison administration aware of threats against his life by the gang known as the D.C. Boys, because it was felt that the first assault/attack was a failed attempt?

**Response**:    I was not involved in the decision to release the Plaintiff from the Special Housing Unit after the first assault. Additionally, since the Plaintiff refused to provide any information concerning a threat to his safety and since I did not have any such information, I was not aware of any reason why the Plaintiff could not remain in the general population.

5.    Did you, defendant Louis Caprio have plaintiff sent to speak with you concerning his insistence{sic} that threats had been made against his life by inmate Kevin Tinsley, who was a member of the D.C. Boys prison gang on May 9, 1999?

**Response**:    No.

7

6.    List separately the following concerning your answer to question #5.

    a.    State specifically why the plaintiff was called to see you on May 9, 1999?

**Response**:    I directed staff to have the Plaintiff report to my office so that I could interview him regarding information staff received from another inmate regarding a possible threat to the Plaintiff.

    b.    Did you make any notes during the conversation with the plaintiff?

**Response**:    Although I do not specifically recall making any notes, it is possible that I may have made minor notes during the conversation with the Plaintiff. At the conclusion of my meeting, I wrote a memorandum discussing the substance of the meeting.

    c.    If you did make notes of that meeting, state in a brief summary what is contained in those notes.

**Response**:    Although I do not specifically recall making any such notes, if I had done so, I would not have retained those notes, therefore, I am unable to summarize what may have been contained in those notes.  My memorandum generally discussed the fact that the Plaintiff had stated that

8

he was not aware of any threats to his safety and that he wanted to remain
in the general population.

d.    After the plaintiff explained that Kevin Tinsley had been the orchestrator of the
April 16, 1999 assault on him, and that he had received word that Tinsley was offering to pay any
member or members of the D.C. Boys who would stab, beat, pipe, or murder plaintiff, what was
the official Bureau of Prisons policy that should have been taken?

    **Response**:    The Plaintiff did not inform me that inmate Kevin Tinsley was allegedly
        behind the April 16, 1999, incident, or that inmate Tinsley was supposedly
        offering to pay other members  to stab, beat, pipe or murder Plaintiff;
        therefore, since I was not aware of any threat to the Plaintiff, I am not
        aware of any policy that should have been followed.

e.    What action was taken by you, and why?

    **Response**:    As I stated above, after I interviewed the Plaintiff, the Plaintiff assured me
        that he did not feel threatened nor did he feel as though he was in any
        danger.  The Plaintiff also insisted that he be allowed to remain in the
        general population.  Based on my investigation and the Plaintiff's own
        statements that no threat to his safety existed and that the Plaintiff wanted

9

to remain in general population, the Plaintiff was returned to his housing unit.

f.    Were you, defendant Louis Caprio present on April 16, 1999 when the first assault was made on the plaintiff?

Response:    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule 33(a). Without waiving this objection, the Defendant responds as follows: Yes.

g.    Did you witness plaintiff being taken to the prison hospital on a gurney passed out, and was he bleeding profusely from a gash in his head?

Response:    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule 33(a).  Without waiving this objection, the Defendant responds as follows: Although I do not recall seeing the Plaintiff "passed out", I do recall escorting the Plaintiff to the institution's Health Services Unit.

h.    Did you, defendant Louis Caprio talk with defendant James White concerning the meeting with the plaintiff on May 9, 1999?

10

**Response**: Defendant respectfully objects to this interrogatory as it is beyond the

 requisite number permitted by the Federal Rules of Civil Procedure, Rule

 33(a). Without waiving this objection, the Defendant responds as

 follows: No.

i. Did defendant James White offer to investigate the matter of the threat against

Pleaintiff {sic}, or was he instructed to do so by you or anyone else to your knowledge?

**Response**: Defendant respectfully objects to this interrogatory as it is beyond the

 requisite number permitted by the Federal Rules of Civil Procedure, Rule

 33(a). Without waiving this objection, the Defendant responds as

 follows: I do not recall having any conversation with Defendant White

 regarding the alleged threat or instructing him or anyone else to investigate

 the alleged threat. Additionally, I am not aware whether defendant White

 offered to investigate the alleged threat.

j. Did defendant James White offer to interview the plaintiff concerning the threats

to his person or was he instructed to do so by you or anyone else to you[sic] knowledge?

**Response**: Defendant respectfully objects to this interrogatory as it is beyond the

 requisite number permitted by the Federal Rules of Civil Procedure, Rule

11

33(a).  Without waiving this objection, the Defendant responds as follows:  I do not recall Defendant White offering to investigate the alleged threat, nor do I recall instructing him to do so.  Additionally, I do not have any knowledge regarding whether any one else instructed Defendant White to investigate the alleged threat.

k.      If a middle aged non-violent, non-gang member inmate is sent to see you, and said inmate who was assaulted seriously within three weeks from meeting, with his face and body still bruised, and a bandage covering his entire head, because of a gash that took 21 stitches to close, and this inmate states that he has received good word that there is a serious threat to his life from the D.C. Boy prison gang, because it is felt that the prior assault was a failure, what action would personally take in this matter to ensure that inmate's safety?

   **Response:**    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule 33(a).   Without waiving this objection, the Defendant responds as follows:  If I receive information that a serious threat exists to any inmate, I would take immediate steps to protect that individual (such as placing him in protective custody) and I would refer the threat as appropriate so that an investigation can be conducted.

l.      The Plaintiff has omitted subpart "l" therefore, no response is required.

12

m.    Did you interview any other inmates concerning the matters brought to your

attention concerning threats made against the plaintiff, before, during or after the

May 10, 1999 meeting with the plaintiff, please give full details?

**Response**:    Defendant respectfully objects to this interrogatory as it is beyond the

requisite number permitted by the Federal Rules of Civil Procedure, Rule

33(a).    Without waiving this objection, the Defendant responds as

follows: Although I did not meet with the Plaintiff on May 10, 1999, I did

meet with the Plaintiff on May 9, 1999.  I did not interview any other

inmates concerning the matters discussed on that date because the Plaintiff

refused to provide any information regarding any credible threat.

Additionally, the Plaintiff refused to provide the names of other inmates to

be interviewed.

n.    On May 14, 1999, an incident report was issued against inmate Kevin Tinsley for

the assault against the plaintiff with a weapon, and for fighting with and assaulting a correctional

officer.  Why was the incident report later expunged and inmate transferred to a lower security

Federal Correctional Institution; give full details?

**Response**:    Defendant respectfully objects to this interrogatory as it is beyond the

requisite number permitted by the Federal Rules of Civil Procedure, Rule

13

33(a). Additionally, the Defendant objects to the release of any such information regarding another inmate without an appropriate signed authorization to release the information since the release of such information may violate the Privacy Act.

    o.    Why was inmate Kevin Tinsley paid a sum of money by the Bureau of Prisons, along with having the May 14, 1999 incident report expunged, and being transferred to a lower security Federal Security Institution; give full details?

    **Response**:    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule 33(a). Additionally, the Defendant objects to the release of any such information regarding another inmate without an appropriate signed authorization to release the information since the release of such information may violate the Privacy Act.

7.    Is there any information that is directly or indirectly known by about the incident report(s) issued, moneies{sic} paid, or transferr(s){sic} concerning the complaint made by the plaintiff in this case, which you have not disclosed?

    **Response**:    Defendant respectfully objects to this interrogatory as it is beyond the requisite number permitted by the Federal Rules of Civil Procedure, Rule

14

33(a). Without waiving this objection, the Defendant responds as follows:

No.

8.    Please give full and complete details to your answer to question number 7.

     **Response**:    Defendant respectfully objects to this interrogatory as it is beyond the

requisite number permitted by the Federal Rules of Civil Procedure, Rule

33(a). Without waiving this objection, the Defendant responds as follows:

Since my response to interrogatory number seven (above) was "No", no

response is required.

15

EXECUTED this ___19th___ day of November, 2001.


Answers by :


LOUIS CAPRIO
Lieutenant
United States Penitentiary
White Deer, PA 17887


Objections By:

MARTIN C. CARLSON
United States Attorney


MARK E. MORRISON
Assistant United States Attorney
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17703

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMANUEL T. NEWMAN,                    )
        Plaintiff                )        CIVIL NO.  1:CV-01-0677
                   )
      v.                             )        JUDGE RAMBO
                   )
RONALD JURY, et. al,                  )
        Defendants               )

## VERIFICATION

      I, Louis Caprio, hereby state, pursuant to the penalties of perjury set forth at

28 U.S.C. §1746, that I have read "Defendant's Supplemental Response to Plaintiff's First

Set of Interrogatories," and that the foregoing is true and correct.

                                          LOUIS CAPRIO
                                          Lieutenant
                                          U.S.P. Allenwood

Executed on this _11/16/01_ day of November, 2001.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMANUEL THOMAS NEWMAN,          :
               Plaintiff        :
                                :    CIVIL NO. 1:CV-01-0677
          v.                    :     (Rambo, J.)
                                :
RONALD L. JURY, Lieutenant,     :
SIS, et al.,                    :
               Defendants       :

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that he is an employee with the Federal Bureau of Prisons and is a person of such age and discretion as to be competent to serve papers.

That on November 19, 2001, he served a copy of the attached

## DEFENDANT CAPRIO'S OBJECTIONS AND RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Northumberland, Pennsylvania.

Addressee:

Emanuel Thomas Newman
Reg. No. 13418-039
FCI Pekin
P.O. Box 5000
Pekin, Illinois 61555-5000

JEFF FROMM
Paralegal Specialist