TAM:MEM:mel

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMANUEL THOMAS NEWMAN,<br>　　　　Plaintiff | : | No. 1:CV-01-0677 |
| v. | : | (Conner, J.) |
| RONALD L. JURY, Lieutenant,<br>SIS, et al.,<br>　　　　Defendants | : | Filed Electronically |

<u>**BRIEF IN OPPOSITION TO**</u>
<u>**PLAINTIFF'S MOTION FOR ORDER ISSUING SUBPOENA DUCES TECUM**</u>
<u>**FOR WITNESSES TO ATTEND CIVIL TRIAL**</u>

　　Emanuel Thomas Newman, a federal prisoner, filed this civil rights action under <u>Bivens</u> alleging that Defendants failed to protect him. Defendants are Lieutenant Louis Caprio and Lieutenant James White. Newman specifically alleges that these staff members allowed him to be assaulted at USP Allenwood on May 14, 1999 by another inmate, Kevin Tinsley, despite his claim that he sought defendants' protection prior to the day of the assault. The case is presently set for trial. Jury selection is scheduled to commence on May 24, 2004.

　　Presently pending before the Court is "Plaintiff's Motion for Order Issuing Subpoena Duces Tecum for Witnesses to Attend Civil Trial" filed by Newman on April 26, 2004. Defendants submit the following in opposition to Newman's motion.

## I. Relevant Procedural History

On November 5, 2003, the Court issued a scheduling order setting jury selection and trial for February 2, 2004 at 9:30 a.m. See Doc. 80. Shortly thereafter, on November 21, 2003, Newman filed a "Motion for Order of Multiple Writs of Habeas Corpus Duces Tecum Ad Testificandum." See Doc. 83. A "Supplemental Motion for Writ of Duces Tecum Ad Testificandum" was filed on December 2, 2003. See Doc. 86. These motions listed a total of six inmates, twenty-four BOP employees and a private doctor whom he wanted to call as witnesses at trial. Included among the list of staff members were "Head Records Officer," George Gallick, Kelly Keiser, B. Manning, and D. Couch. Dr. Weyand (identified as "Dr. Whyatt"), an eye doctor not employed by the BOP, was also listed. The motions requested the Court to issue writs of habeas corpus ad testificandum to guarantee the appearance of all of these individuals at trial. Defendants responded to the motion on December 4, 2003. See Doc. 87.

On December 10, 2003, Newman amended his motions by adding BOP attorney K. Michael Sullivan to the list and by correcting the spelling of Dr. Weyand's name. See Doc. 89. Shortly thereafter, in a filing dated December 9, 2003, Newman shortened his witness list to Dr. Weyand and the following BOP staff members: Couch, Manning, Sullivan, Gallick, Keiser, and Assistant Warden Craig, whom he now identifies as the "Records Officer."

2

By Order dated January 6, 2004, Newman's motion for order of multiple writs of habeas corpus ad testificandum was granted to the extent that five of the six inmates named (Brown, Worthy, Hazel, Jackson and Tinsley) were granted permission to testify on Newman's behalf at trial. The remainder of the motion was denied and, with respect to the non-inmate witnesses, the Court informed Newman that "the proper method for securing the attendance of non-incarcerated witnesses is the issuance of a subpoena pursuant to Federal Rule of Civil Procedure 45 . . . ." See Doc. 99. On the same date, the trial was continued until May 24, 2004. See Doc. 98.

Presently before the Court is "Plaintiff's Motion for Order Issuing Subpoena Duces Tecum For Witnesses to Attend Civil Trial."

## II.  Factual Background

On or about April 12, 2004, K. Michael Sullivan, Senior Attorney for the Bureau of Prisons at USP Allenwood[1], received a facsimile copy of a letter dated April 8, 2004 from Staff Attorney David Glassman of the Lewisburg Prison Project. See Exh. 1, ¶ 3 and Att. 1. Essentially, the letter inquired as to whether Sullivan, the "proposed witnesses, or any other staff member" would accept service of three subpoenas. The subpoenas

---

[1] Contrary to Evans' assertions, Attorney Sullivan is not the "U.S. Attorney" nor is he employed in the United States Attorney's Office. See Exh. 1, ¶ 2.

were addressed to "Assistant Warden Craig," "Captain Robert Farley," and "Doctor James Weyand". <u>Id.</u> ¶ 4.

Upon receipt of the letter, Sullivan notified Captain Farley and Associate Warden Craig that they may be contacted by Attorney Glassman and that they should contact him if they had any questions. <u>Id.</u>

On or about April 13, 2004, Sullivan spoke with Attorney Glassman regarding his letter. Glassman discussed his role in the case and stated that he wanted to come to the institution to serve the subpoenas. Sullivan informed Glassman that Doctor Weyand was not an employee of the Bureau of Prisons and that he would not be there. Sullivan also informed him that the other two individuals were employees at USP Allenwood. <u>Id.</u> ¶ 5.

Sullivan further informed Glassman that government employees were not authorized to accept mileage checks from him. Glassman stated he was not familiar with the rules so Sullivan referred him to Rule 45 of the Federal Rules of Civil Procedure (Subpoenas). After a brief discussion, Mr. Glassman stated that he would come by the institution the following day. <u>Id.</u> ¶¶ 6-7.

On or about April 14, 2004, Glassman called Sullivan to say that he would not be coming to the institution because it appeared as though the subpoenas did *not* conform to the Federal Rules of Civil Procedure. The two briefly discussed the subpoenas and Glassman stated he was going to contact Newman to discuss the matter further. <u>Id.</u> ¶ 8.

On or about April 15, 2004, Glassman arrived at USP Allenwood unannounced.  Sullivan was contacted by the Front Desk Officer as to his arrival, and then spoke with Glassman.  Essentially, Glassman felt that the subpoenas substantially complied with the rules and that Sullivan should accept them on behalf of the staff members.  Sullivan informed him that he was not authorized to accept service on behalf of either staff member and that Associate Warden Craig was on leave at that time.  Sullivan also informed him that Captain Farley was present at the institution.  Id. ¶ 9.

Sullivan and Glassman discussed the case and Sullivan informed him that neither of the two named staff members were "records custodians" and that neither employee had worked at USP Allenwood at the time of the events in question, nor did either one of them have any involvement in the events in question.  Sullivan further stated that although Associate Warden Craig's name had been raised once before, Captain Farley's name had never been mentioned.  Id. ¶ 10.

Sullivan then informed Glassman that he had not yet seen the subpoenas.  Consequently, Glassman showed the subpoenas to Sullivan.  Sullivan informed him that it did not appear as though the subpoenas conformed to the Federal Rules of Civil Procedure, and that he had spoken with undersigned counsel about the subpoenas in question.  Since the subpoenas did not appear to conform to the rules, Sullivan informed Glassman that if he was

asked by the two staff members in question, he would advise them not to accept service at this time.  Id. ¶ 11.

Sullivan then offered to review the list of requested records to determine if the records were already being brought to the trial by the undersigned.  Glassman and Sullivan generally discussed the items and Sullivan informed him that most, if not all, of the requested records that were still in existence were already being brought to the trial by the undersigned.  Sullivan then identified which records were no longer in existence.  Id. ¶ 12.  Finally, Sullivan strongly encouraged Glassman to discuss this issue with the undersigned since he is the attorney of record in this case.  Sullivan further informed Glassman that his role as agency counsel was limited to providing advice to staff (if requested) regarding whether or not they should accept service of court documents.  Id.

In addition to directing Glassman to speak with undersigned counsel, Sullivan also offered him an opportunity to tour USP Allenwood so he could view specific areas pertinent to the case.  Glassman accepted the offer and they successfully completed the tour.  Id. ¶ 13.  Although Sullivan informed Glassman that he would advise the two staff members not to accept service of the subpoenas, he never refused to contact the staff members in question to meet with Glassman.  In fact, as stated above, upon receipt of the initial letter, Sullivan immediately contacted the staff to notify them of the subpoenas, and he contacted Glassman to coordinate a time for him to serve the subpoenas.  Id., ¶ 14.

6

It was Sullivan's understanding that Glassman was going to contact the undersigned to resolve any issues surrounding the subpoenas. Id., ¶ 15.

### III. Question Presented

Should the motion for issuance of subpoenas duces tecum be denied as to Couch, Manning, Gallick, Keiser, Craig and Farley?

Suggested answer in the affirmative.

### IV. Argument

Newman requests the Court to issue subpoenas duces tecum for seven individuals, claiming that his requests for assistance from the Clerk's Office have been ignored and that the "U.S. Attorney" "rejected" his attempts at serving subpoenas upon the witnesses at USP Allenwood through the Lewisburg Prison Project. The seven individuals he wishes to subpoena include six he has previously listed as witnesses (Couch, Manning, Gallick, Keiser, Craig, and Weyand) and now Captain Farley as well. Defendants oppose Newman's requests for the issuance of subpoenas upon Couch, Manning, Gallick, Keiser, Craig and Farley.[2]

As to Craig and Farley, Newman appears to include these individuals as "records custodians" in order that they can bring documents he intends to use as evidence. Rather than have these individuals appear at trial, however, Newman can simply list the items he requests on a subpoena directed to the "Warden or his

---

[2] The United States Attorney's Office does not represent Dr. Weyand as he is not a federal employee.

designee." Craig and Farley are employed as the Associate Warden and Captain, respectively; they are not "records custodians."

As to Manning and Couch, these individuals will be produced at trial as witnesses for the government. Since their presence is already anticipated, it will not be necessary for the Court or for Newman to incur the cost of issuing and serving subpoenas upon these individuals.

As to Keiser (now known as Kelly McMahan), Newman has indicated in his previous filings that she "was plaintiff's case manager, and received numerous administrative remedies concerning his injury, and ignored them all. Thereby allowing plaintiff to remain in the Special Housing Unit for some 7 months untreated by medical staff." See Doc. 83, p. 6. Likewise, Counselor Gallick "will be called to testify concerning plaintiff remaining in the Special Housing Unit for over seven months without being seen by medical, even though he was sent numerous administrative remedies concerning same. Furthermore, Counselor Gallick will testify concerning his attempt to deny plaintiff Due Process by ignoring his administrative remedies and or destroying them so as to stop plaintiff from filing. And that he bring with him all administrative remedies filed by plaintiff from May 14, 1999 to January 16, 2000." Id., p. 5.

This case is going to trial on Newman's claim that defendants Caprio and White failed to protect him from Tinsley's assault on May 14, 1999. There are no issues before the Court concerning Newman's medical treatment or his exhaustion of

administrative remedies.  By Newman's own submissions, these individuals would testify to items which are not relevant to the case at hand.  To force them to take several days away from their positions in order to appear for this purpose would be a waste of the government's time and money and a burden for those who must fulfill their duties while they are away from the institution.  Therefore, their presence should not be required.

### V.  Conclusion

For the reasons stated above, Newman's request that the Court issue him subpoenas for these individuals should be denied.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney


s/Mark E. Morrison
MARK E. MORRISON
Assistant U.S. Attorney
Atty. I.D. No. PA43875
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17701
Phone:  717-221-4482
Fax: 717-221-2246

Date: May 6, 2004

9

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMANUEL THOMAS NEWMAN,** : | |
| Plaintiff : | |
| : | |
| v. : | Civil No. 1:CV-01-0677 |
| : | (Conner, J.) |
| **RONALD L. JURY, Lieutenant,** : | |
| **SIS, et al.,** : | **FILED ELECTRONICALLY** |
| Defendants : | |

CERTIFICATE OF SERVICE BY MAIL

      The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

      That on May 6, 2004, she served a copy of the attached

**BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR ORDER ISSUING SUBPOENA DUCES TECUM
FOR WITNESSES TO ATTEND CIVIL TRIAL**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Emanuel Thomas Newman
Reg. No. 13418-039
Federal Correctional Institution
P.O. Box 1000
Oxford, WI 53952-1000

                                            s/ Michele E. Lincalis
                                            MICHELE E. LINCALIS
                                            Paralegal Specialist