UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMANUEL THOMAS NEWMAN,
PLAINTIFF,

CASE No 1: CV-01-0677

(CONNER, J)

-Vs -

RONALD L. JURY, LIEUTENANT,
SIS, ET AL.,
DEFENDANT

FILED
HARRISBURG

MAY 2 4 2004

MARY E. D'ANDREA, CLERK
Per_____
Deputy Clerk

PLAINTIFF'S RESPONSE TO THE
DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR
ORDER ISSUING SUBPOENA, DUCES TECUM FOR WITNESSES TO
ATTEND CIVIL TRIAL

COMES NOW, EMANUEL THOMAS NEWMAN, PLAINTIFF PRO-SE,
AND SUBMITS THE FOLLOWING IN RESPONSE TO DEFENDANTS BRIEF
IN OPPOSITION.

PLAINTIFF WAS PLACED INTO HOLDOVER TRANSIT, ON 4-29-04,
AND IS CURRENTLY BEING HELD AT THE DAUPHIN COUNTY PRISON
UNDER 22 HOUR LOCK DOWN. THE PRISON REFUSES TO PROVIDE
PEN, PENCIL, PAPER, ENVELOPE, OR STAMPS; AND PLAINTIFF HAS
ONLY BEEN ABLE TO RESPOND BY THE BLESSINGS OF GOD, AND
MERCIES OF OTHER INMATES.

ON NOVEMBER 5, 2003, THIS COURT ISSUED AN ORDER
SETTING THE TRIAL DATE FOR THIS CASE ON FEBRUARY 2, 2004,
AND COMMANDING PLAINTIFF TO SUBMIT HIS WITNESS LIST.

SAID LIST INCLUDED 24 B.O.P. STAFF, 1 CONTRACT DOCTOR,
AND 6 INMATES WITNESSES.

THE DEFENDANTS IN RESPONSE SUBMITTED A
VOLUMOUS BRIEF IN OPPOSITION TO PLAINTIFF'S WITNESS
LIST; (MOTION FOR MULTIPLE WRITS OF HABEAS CORPUS).

— 1 —

IN SUPPORT THEREOF PLAINTIFF STATES THE FOLLOWING:

PLAINTIFF COMPLETELY DENIES THE DEFENDANT'S ALLEGATIONS THAT "BY NEWMAN'S OWN SUBMISSIONS, THESE INDIVIDUALS WOULD TESTIFY TO ITEMS WHICH ARE NOT RELEVANT TO THE CASE AT HAND." EACH ADMINISTRATIVE REMEDY FILED BY PLAINTIFF CONTAINED A DETAILED ACCOUNT OF WHAT HAD TAKEN PLACE ON APRIL 16, 1999 AND MAY 14, 1999, AND WHY STAFF, CAPRIO AND WHITE AMONG OTHERS WERE SENDING ME MEMORANDUMS WHICH CONTAINED FALSE INFORMATION RELATED TO THE INCIDENTS IN QUESTION.

FURTHERMORE, DEFENDANT CAPRIO WAS THE LIEUTENANT OVER THE SPECIAL HOUSING UNIT THE MAJORITY OF THE TIME I WAS IN THE SHU, AND EVERY TIME I FILED A HAND WRITTEN REQUEST ASKING FOR THE PROPER ADMINISTRATIVE REMEDY FORMS, EVERY STAFF PERSON I WROTE IGNORED MY REQUEST.

FINALLY, STAFF GAVE ME A HEARING ON OCTOBER 15, 1999, AND AT SAID MEETING IT WAS ADMITTED THAT MY CLAIMS (ALL OF THEM) WERE TRUE. WHEN I REQUESTED A WRITTEN RESPONSE MY REQUEST WERE IGNORED, UNTIL I PRESSED THE ISSUE WITH THE WARDEN'S OFFICE ON 11-8-99, AND RECEIVED A RESPONSE STATING THAT I COULD NOT RETURN TO THE COMPOUND BECAUSE A SERIOUS THREAT REMAINED PRESENT, AND PLAINTIFF'S SAFETY COULD NOT BE ENSURED. 14 DAYS LATER PLAINTIFF WAS ONCE AGAIN PLACED BACK INTO POPULATION, EVEN THOUGH A THREAT STILL EXISTED. IT WAS NOT UNTIL PLAINTIFF CONTACTED THE LEWISBURG PRISON PROJECT, AND HAD ATTORNEYS COME TO VISIT HIM, THE FOLLOWING WEEK HE WAS TRANSFERRED.

Gallack and Keiser were the staff to whom said Administrative Remedies were directed, and became actors in this civil conspiracy, because their actions facilited the Denial of plaintiff's constitutional Rights, when they Ignored His Administrative Remedys and placed him in harms way for a Third Time, After the warden's Investigation which stated otherwise.

LASTLY, in Defendant's opposition to plaintiff's first witness list, counsel characterized to the court and ~~PLAINTIFF~~, That plaintiff had the responsibility to pay $40 per non-inmate witness. That Amount came to $1000, and plaintiff believing He had to carry said Burden Shorten his witness list. In fact Defendant's mis-lead the court and this plaintiff; B.O.P. Staff as admitted by counsel are not allowed to accept the $40 witness fee. ~~———~~,

Craig and Farley, should be allowed to testify by this court under Fed. Rul. Evi. Rule 702, because they are EXPERTS in the issues of threat management, and the B.o.p. procedures and policies related to same. Also, they are experts in policy in the care and custody of Records i.e. passes and pass Books.

Respectfully submitted by _____
Emanuel T. Newman
Plaintiff Pro-se

CERTIFICATE OF SERVICE

I, Emanuel T. Newman, pursuant to Title 28 U.S.C. § 1746, Do Hereby State that I Have maileds of This Document to all parties concerned. This 15th Day of May, 2003

By _____

COPIES To

CLERK OF THE COURT
U.S. DISTRICT COURT
228 WALNUT STREET
HARRISBURG, PA 17108

U.S. ATTORNEY
316 Fed Building
240 WEST THIRD STREET
WILLIAMSPORT, PA
17708

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMANUEL THOMAS NEWMAN,    :

            Plaintiff,    :

v.    :    Civil No. 1:CV-01-0677

RONALD L. JURY, et al.    :

            Defendants.    :    (Conner, J.)

## DECLARATION OF DAVID L. GLASSMAN, ESQ.

1.    On Tuesday, April 13, 2004, I spoke by telephone with K. Michael Sullivan, counsel at U.S.P. - Allenwood, concerning an agreeable time for me to serve two subpoenas and tender mileage checks on behalf of the Plaintiff.

2.    Mr. Sullivan invited me to "stop by anytime" between 8:00 a.m. and 4:00 p.m., Tuesday April 13 through Thursday April 15, 2004. He further stated that I should not visit on Friday April 16 because he would be out that day.

3.    Mr. Sullivan further advised me that Rule 45 prohibits BOP staff from accepting mileage reimbursement checks.

4.    I never told Mr. Sullivan that I "was not familiar with the rules" of Civil Procedure. I did admit that I was unfamiliar with any provision of Rule 45 which prohibited Government staff from accepting mileage fees, especially in view of the position taken by defense counsel last year that the Plaintiff should be

required to tender mileage fees to all of his desired non-confined witnesses.

Rather, I informed Mr. Sullivan that I disagreed with his interpretation of the

relevant portion of Rule 45(b)(1) but that I demurred to his opinion, which inured

to the benefit of the Plaintiff anyway.

5.    On either April 13 or 14, I accepted an invitation by Mr. Sullivan to

speak with AUSA Mark Morrison on a three-way call to discuss the matter further.

Mr. Sullivan put me on hold, then returned to the call without Morrison.

6.    Mr. Sullivan informed me that he just had gotten off the phone with

Morrison and that Morrison was unable to speak with me because Morrison was

in Court at the moment.

7.    Mr. Sullivan related that, according to Morrison, Morrison already

had advised the Plaintiff how to subpoena BOP witnesses and that Morrison was

tired of helping Plaintiff put on Plaintiff's own case.

8.    I later reviewed the docket on PACER and concluded that Morrison

was incorrect and that Plaintiff was correct with respect to Plaintiff attempting to

abide by Rule 45 and the Orders of the Court concerning service of subpoenas.

9.    On the morning of Thursday April 15, I called the office of Mr.

Sullivan. I left a message on his voice-mail that I had decided to drop by that

afternoon per his invitation of April 13 because I had changed my opinion of the

legitimacy of the home-made subpoenas based upon my further review of Rule

45(a)(3) and since he told me that he would be out on Friday, April 16.

9.     On the afternoon of April 15, I presented myself to the Front Desk Officer at U.S.P. - Allenwood.  She informed me that she was expecting me.  It is possible that she was relying upon a message left for her back on April 13 by Mr. Sullivan.  Mr. Sullivan then cordially met with me in the lobby.  Therefore, I did not arrive at the institution "unannounced."

10.    Mr. Sullivan correctly declares that he never "refused" to permit me to meet with the subjects of the subpoenas.  However, I accepted his opinion that Captain Farley unlikely would accept service once Mr. Sullivan advised him not to accept service from me.  Therefore, I elected to accept the opinion of Mr. Sullivan rather than proceed through a useless exercise of tendering service, having service refused, and interrupting the work of Captain Farley for nothing.

11.    I asked Mr. Sullivan why he and Captain Farley merely could not accept service and then ask Morrison to move to quash the subpoenas.  Mr. Sullivan responded that he felt that my suggestion was impractical, especially given that the subjects of the subpoenas have no custody of the records sought by the Plaintiff to be brought to trial and that they had not worked at Allenwood in 1999 anyway.

12.    Mr. Sullivan correctly declares that he encouraged me to contact

Morrison. I elected against contacting Morrison because:

    a. of the tone of his earlier response as related to me by Mr. Sullivan
        and my expectation that further communication merely would
        result in additional adversarial rhetoric;

    b. the inconsistent positions already taken with respect to the mileage
        fee issue;

    c. I am not counsel of record for the Plaintiff; and

    d. I already was dissatisfied by the response of Mr. Sullivan as to
        why Morrison had initiated no stipulation with the *pro se*
        Plaintiff concerning the records being sought rather than
        wasting the time of the Court, the Plaintiff, and myself.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 13, 2004.

David L. Glassman, Staff Attorney
Lewisburg Prison Project, Inc.