UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMANUEL T. NEWMAN, PLAINTIFF, | CASE NO 1:CV-01-0677 |
| V. | (CONNER, J) |
| RONALD L. JURY, SIS, ET AL., DEFENDANTS | FILED HARRISBURG MAY 24 2004 MARY E. D'ANDREA, CLERK Per_____ Deputy Clerk |

## PLAINTIFF'S TRIAL BRIEF

1) SUMMARY OF EVIDENCE

COMES NOW, EMANUEL T. NEWMAN, PLAINTIFF PRO-SE, WHO BROUGHT THE BIVENS ACTION AT BAR.

DURING ALL RELEVANT TIMES PLAINTIFF WAS INCARCERATED AT U.S.P. ALLENWOOD.

PLAINTIFF'S EIGHTH AMENDMENT RIGHTS WERE VIOLATED WHEN LIEUTENANTS CAPRIO AND WHITE FAILED TO PROTECT HIM FROM SERIOUS HARM THAT THEY KNEW OF OR SHOULD HAVE BEEN AWARE OF.

—1—

On April 16, 1999, Plaintiff was assaulted in the dishroom at U.S.P. Allenwood suddenly and without provocation with a metal club by an inmate who was unknown to him.

Plaintiff suffered numerous contusions, and cuts to his head and body, he was taken to the hospital on a gurney because he was passing in and out of conciousness from the loss of blood.

Plaintiff remained in the prison hospital under oberservation for 5 days. On April 21, 1999, Plaintiff was returned to general population by Lieutenant Ron L. Jury.

-2-

In paragraph 11 of his civil complaint this plaintiff stated that Lieutenant Jury had returned him to the population without a thorough investigation.

After receiving information via Freedom of Information Act from the B.O.P., plaintiff came to the conclusion that Lieutenant Jury had in fact done a thorough investigation, but was unable to uncover any information about the murder conspiracy between the inmate who carried out the April 16, 1999 assault, and inmate Kevin Tensley, who initiated a secret

-3-

conspiracy among the D.C. Boys at this onset.

Therefore, plaintiff voluntarily withdrew Lieutenant Jury from this litigation.

Plaintiff, after being released into the population, was informed by inmate Wayne E. Jackson that inmate Kevin Tensley had initiated a conspiracy among the D.C. Boys to have him murdered, and that the inmate who had attacked him in the Dish-Room had been acting in the furtherance of that conspiracy.

Plaintiff, went to Lieutenant Caprio and made him aware of

—4—

conspiracy against him, and requested that he do whatever was necessary to ensure his safety. Caprio said that he would look into the matter and get back with me. He then returned me to the population.

As plaintiff sat before Lieutenant Caprio his appearance was that of serious assault. Plaintiff's head wound from the April 10, 1999 assault bled for almost a month, and testimony presented at trial will show that the bandage was changed daily. The left side of plaintiff's face was swollen, his

—5—

lip on that side of his face was also swollen and purple, his entire head was wrapped in a bandage that was soaked through with a large blood stain.

As a professional in the field of corrections, Lieutenant Caprio should have taken one look at plaintiff's physical injuries, and after being made aware of the murder conspiracy by this plaintiff. He should have concluded that plaintiff has already been seriously assaulted once, and knowing the violent history of the D.C. Boy, moved to protect plaintiff

- 6 -

Plaintiff, in his civil complaint at paragraph 20, states that he suffered extensive prior dangerous head injuries and continuing significant loss of vision, and that between May 8th and May 14, 1999, he suffered severe anxiety and fear for his life, arising from his unsuccessful attempt to obtain protection from Caprio and White. And, that this plaintiff's fears intensified once he provided detailed information to Lieutenants Caprio and White.

-7-

The injuries sustained during the April 16, 1999 assault are material to plaintiff's claims, because they make the existence of the murder conspiracy more probable than not in the minds of the jurors.

Furthermore, the probative value outweighs any unfair prejudice. Thereby, preventing the jury from being mislead into believing that the assaults against plaintiff are separate unrelated incidents, which neither defendants could have done anything about. Furthermore, in defendants interrogatories they requested to know what injuries were sustained on May 14, 1999, and

—8—

had they requested to know the extent of the April 16, 1999 injuries and their relevance to plaintiff's claims he would have provided the information.

2) SUMMARY OF LEGAL ISSUES AND AUTHORITIES RELIED UPON BY PLAINTIFF:

To establish an Eighth Amendment claim plaintiff must establish, and satisfy the two prong test required by the Supreme Court in <u>Farmer v. Brenan</u>.

<u>FIRST</u>, a "serious" deprivation of basic human needs that amount to a wanton and unnecessary infliction of pain. Plaintiff was the victim of an unsuccessful murder conspiracy for a second time, because of the defendants failure to protect him after having been made aware.

-9-

Secondly, prison officials showed a reckless disregard for safety by failing to act in response to danager, which they knew of or should have known of. Because of: (1) the volent history of the D.C. Boys; (2) A review of Tensley's criminal case which deals with multiple murders inter alia; (3) Information provided by their inmate informants; and (4) the detailed information provided by plaintiff, as well as his physical apperance due to the April 16, 1999 assault. Therefore, the defendants were of a culpable state of mind, because they knew or should have known of a serious risk of danger to this plaintiff.

—10—

a) <u>Standard of Review</u>:

"In an action by a prisoner under the cruel and unusual punishments clause of the Federal Constitution's Eighth Amendment, prison officials may not escape liability for deliberate indifference by showing that while they were aware of obvious, substantial risk to prisoner safety, they did not know that the prisoner was especially likely to be assaulted by the specific inmates who eventually committed the assault; the question under the Eighth Amendment is whether prison officials, acting with <u>deliberate indifference</u>, exposed a prisoner to a sufficiently substantial risk of serious damage to the prisoner's health, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to that prisoner or because all prisoners in that prisoner's situation face such a risk..."

<u>Farmer v. Brennan</u>, 128 L.Ed.2d 811, 815 (1994)

The Supreme Court in <u>Farmer</u> overturned it's prior decision in <u>Wilson v. Seiter</u>, 115 L.Ed.2d 271 (1991) concerning the standard of review for civil cases brought by prisoners claiming deliberate indifference issues.

—11—

Justice's White, Marshall, Blackmun, and Stevens joined in a concurring separate opinion concerning the <u>Wilson v. Seiter</u> Ruling:

> "The ultimate result of today's decision, I fear, is that 'serious deprivations of basic human needs'... will go unredressed due to an unnecessary and meaningless search for deliberate indifference."
>
> <u>Wilson v. Seiter</u>, 115 L.Ed.2d 271, 287 (1991)

The Defendant's rely upon the court's overturned ruling as part of the authorities cited as a standard of review for plaintiff's claims of deliberate indifference to no avail. Because, pursuant to the ruling in <u>Farmer</u>, the Defendant's knew or should have known after being made aware of the pending threat, and plaintiff's appearence after the April 16, 1999 murder attempt by a member of the D.C. Boys.

-12-

The Defendant's allege that this plaintiff has failed to disclose the identity of his expert witnesses as required by Fed.R.Civ.P. 26 (a)(2)(A). This allegation is true in part and false in part. Plaintiff listed Dr. Whyett (now known to be Dr Weyand) in his reply to their interrogatories, and detailed what his testimony would be about, as an expert witness.

Both plaintiff and the court were mislead concerning the subpoening of plaintiff's non-inmate witnesses, and made plaintiff believe he had to pay $40.00 for each non-inmate witness, when in fact he only had to pay the witness fees for Dr Weyand.

Throughout the witness call process this plaintiff has had problems. There are no clear instructions on how an incarcerated pro-se litigant should go about completeing the task. Because, the court is going proceed under

LOCAL RULE 42.1 (ORDER OF PROOF AND BIFURCATION)

IT WILL ABSOLUTLY NECESSARY FOR PLAINTIFF TO CALL EXPERT WITNESSES ON THE SUBJECT OF EYE INJURIES AND CORRECTIONAL PROCEDURES. BECAUSE, THE SUBPOENING, PRESENTATION, AND CROSS-EXAMINATION IS A SERIOUSLY COMPLICATED PROCESS, PLAINTIFF INTENDS TO MAKE AN ORAL MOTION BEFORE THE COURT FOR APPOINTMENT OF COUNSEL BECAUSE THE EXPERT WITNESS PROCESS IS FAR BEYOND HIS SCOPE OF KNOWLEDGE OR ABILITY TO COMPLETE DO TO HIS INMATE STATUS.

PLAINTIFF, WOULD REQUEST THE COURT TO FOREGO ANY SANCTIONS AGAINST HIM FOR THE REASONS CITED ABOVE.

RESPECTFULLY SUBMITTED BY _[signature]_
PLAINTIFF PRO-SE.